IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 11, 2001

## STATE OF TENNESSEE v. ANTONIO BONDS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-08055     W. Fred Axley, Judge**

---

**No. W2000-01242-CCA-R3-CD  - Filed August 13, 2001**

---

The Appellant, Antonio Bonds, was indicted by a Shelby County Grand Jury on one count of premeditated first-degree murder.  On September 30, 1999, a jury found Bonds guilty of the indicted offense and he was sentenced to life imprisonment.  On appeal, Bonds raises one issue for our review: Whether "the evidence of [his] identity as the culprit is sufficient to support the verdict beyond a reasonable doubt."  After review, we find the evidence legally sufficient to support the verdict of first-degree murder.  Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

W. Mark Ward, Assistant Public Defender; AC Wharton, Public Defender, Memphis, Tennessee, (on appeal); William L. Johnson, Memphis, Tennessee, (at trial), for the Appellant, Antonio Bonds.

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, John H. Bledsoe, Assistant Attorney General, and  Edgar Peterson, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

On January 15, 1998, the body of the twenty-year-old victim, David Stewart, was found in a vacant parking lot near Humes High School in Memphis by two employees of Memphis Light, Gas and Water.  An autopsy revealed that the cause of death was multiple gunshot wounds, with the most significant injuries being to the brain, lungs, and a blood vessel in the neck.

When the Appellant, Bonds, was eleven years old, he dated Tamekia Mosley for a period of approximately two years. During this period, Mosley, the victim and the Appellant were all close friends. The relationship between the Appellant and Mosley, however, ended in 1992 or 1993. After the break-up, the victim and the Appellant remained friends but neither had any further contact with Mosley.

Several years later, in December of 1997, Mosley contacted the victim and requested that he reunite her with the Appellant. The victim complied and the relationship between the Appellant and Mosley renewed. Unbeknownst to Mosley, however, the Appellant was also dating Jennifer Tyler, the mother of his two-year-old daughter. After Tyler learned of the Appellant's renewed relationship with Mosley, "numerous telephone [and confrontational] conversations" occurred between the two. The proof established that Mosley's telephone number was given to Tyler by the victim.

On January 13, 1998, Tyler attempted to enter the Appellant's apartment but was refused entry by the Appellant because Mosley was inside. On this occasion, Tyler engaged the Appellant in a discussion over Mosley's presence at the apartment and was overheard telling the Appellant to "tell the bitch to come outside."

On January 14, 1998, Mosley spent the night with the Appellant. As she was leaving the next day, on January 15, 1998, she found a message written in lipstick on her car which said, "Go away whoever; I'm watching you." Mosley went back inside, told the Appellant what she found, and they walked outside together to look at her vehicle. Upon seeing the message, the Appellant became angry and stated, "I'm going to get that boy." Mosley told the Appellant that it was not the victim's fault that Tyler wrote on her car, but the Appellant insisted that the victim "talked too much" and must have told Tyler what Mosley's car looked like in order for Tyler to know which vehicle to leave the message on. The Appellant immediately put his daughter in his car and told Mosley that he was going to get the child some food.

About two hours later, Mosley received a call from the Appellant who said, "you don't have to worry about [the victim] anymore." When she asked what he meant, he said he had to go. Later that night, the Appellant again called Mosley. This time the Appellant explained that he had gone by the victim's house, picked him up, and drove around for some time questioning the victim about what he had told Tyler. The Appellant further stated that he shot and killed the victim in a vacant parking lot near Humes High School. The Appellant told Mosley that the victim "talked too much" and that he blamed the victim for their prior breakup in 1993.

Later that same evening, the Appellant stopped by Tyler's house with their daughter. Their daughter grabbed a piece of chair shaped like a gun and pointed it at Tyler saying, "pow-pow." The Appellant said, "your boy is gone" and explained to Tyler that he had gone by the victim's house earlier that day, grabbed him and shot him near Humes High School. He further explained that the victim felt nothing initially, so he kept shooting. Later, when Tyler was visiting the Appellant in jail, he again stated, "your boy is gone." At trial, Tyler admitted to being the person who wrote on Mosley's car and verified that the victim did, in fact, tell her the make and model of Mosley's

vehicle. She explained that she was angry because several days prior to the incident the Appellant told her that he and Mosley were not dating.

## ANALYSIS

### I. Sufficiency of the Evidence

A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Likewise, it is not the duty of this Court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. *See generally* State v. Adkins, 786 S.W.2d 642, 646 (Tenn. 1990); State v. Burlison, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993). Instead, the defendant must establish that the evidence presented at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994), *cert. denied*, 513 U.S. 1086, 115 S. Ct. 743 (1995); Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992), *cert denied,* 507 U.S. 954, 113 S. Ct. 1368 (1993).

The Appellant contends that the evidence presented at trial was insufficient to identify him as the person who committed the crime. Specifically, he argues that the "Appellant's conviction is based solely upon the testimony of two ex-girlfriends, neither of whom claim to have seen the killing, but claim that [the] Appellant admitted his guilt to them after the fact."

The Appellant was convicted of first-degree murder. In order to sustain a conviction for first-degree murder, the State must show that the perpetrator intentionally and with premeditation killed another. Tenn. Code Ann. § 39-13-202(a)(1). Moreover, as the Appellant contends, the State has the burden of proving beyond a reasonable doubt that the Appellant is the person who murdered the victim. In the present case, the evidence presented at trial established that the Appellant was upset with the victim for giving one girlfriend information about the other girlfriend. The testimony also revealed that two hours prior to the victim's body being found in a vacant lot, the Appellant told Mosley that "he was going to get that boy," referring to the victim. Both Mosley and Tyler testified that the Appellant admitted to them shortly after the incident that he had killed the victim by shooting him multiple times in a vacant lot behind Humes High School. In regard to this testimony, it is not our prerogative to reassess witness credibility. Two employees of Memphis Light, Gas, and Water, along with officers who arrived on the scene, testified that the victim was found in a vacant lot behind Humes High School. The medical examiner testified that the victim died due to multiple gunshot wounds. Furthermore, the Appellant's child, who was with the Appellant the entire day of

the murder, began acting out a "shooting scene," something her mother had never seen her do before, when the Appellant brought her by the mother's house later that night.

In this case, the jurors heard testimony against the Appellant which demonstrated evidence of opportunity, motive and the introduction of independently corroborated inculpatory statements of the Appellant. The Appellant's extra-judicial admissions furnish direct evidence of his guilt of the crime. These facts are sufficient to permit a jury to properly conclude beyond a reasonable doubt that the Appellant intentionally and with premeditation murdered the victim.

## CONCLUSION

After reviewing the evidence in the light most favorable to the State, we find the evidence presented at trial was legally sufficient to support the conviction for first-degree murder. Thus, we affirm the judgment of the Shelby County Criminal Court.

_____
DAVID G. HAYES, JUDGE